## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **IN RE:** | : | **CASE NO. 14-21261 (ASD)** |
| | : | |
| **CHARLIE SMITH** | : | **CHAPTER 7** |
| | : | |
| **DEBTOR** | : | **October 6, 2014** |

---

| | | |
|---|---|---|
| **PACIFIC INS. CO., LTD A** | : | **ADVERSARY PROCEEDING** |
| **SUBSIDIARY OF THE HARTFORD** | : | |
| **FINANCIAL SERVICES GROUP a/s/o** | : | |
| **PETER PAN BUS LINES TRUST** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLIE SMITH** | : | **October 6, 2014** |

### COMPLAINT OBJECTING TO DISCHARGE

Pacific Insurance Company, LTD, a Subsidiary of The Hartford Financial Services Group a/s/o Peter Pan Bus Lines Trust ("Pacific"), plaintiff and creditor of the above-named debtor, Charlie Smith ("Smith"), alleges:

### INTRODUCTION

1. As set forth more fully below, Debtor Smith was injured in a motor vehicle collision while in the course of his employment. Plaintiff Pacific paid Debtor Smith workers' compensation benefits in excess of $60,000. Debtor Smith brought claim against the tortfeasor and settled such claim for $100,000. Plaintiff Pacific had a lien against such settlement, but Debtor Smith disregarded that lien. Plaintiff Pacific brought suit against Debtor Smith relative to the lien and was awarded judgment of $75,429.56 on September 4, 2013, nine months prior to the petition date. In his petition, the attached schedules, statements, and declarations, Debtor Smith failed to properly identify the

nature and amount of Plaintiff's claim, neither did he amend or correct same at the
meeting of creditors.  Further, in his petition, the attached schedules, statements, and
declarations, Debtor Smith failed to properly identify his potential claim against Attorney
T.J. Morelli-Wolfe who represented Debtor in the tort claim, neither did he amend or
correct same at the meeting of creditors.  These actions render Debtor Smith ineligible for
discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) & (a)(5).  These actions further render
Smith's debt to Pacific nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) & (a)(4).

## JURISDICTION

2.   This is an adversary proceeding in the debtor's Case No. 14-21261 under Chapter 7 of
Title 11 of the United States Bankruptcy Code, now pending in this Court. This Court has
jurisdiction of this adversary proceeding pursuant to 11 U.S.C. §§ 727 & 523. This is a
core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J).

3.   Defendant Smith is not eligible for discharge as a debtor in his bankruptcy action
pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (5). Smith is also indebted to plaintiff creditor
as fully detailed below, and the debt is not dischargeable in bankruptcy by virtue of the
provisions of 11 U.S.C. §§ 523(a)(2) and (4).

## PARTIES

4.   Plaintiff Pacific Insurance Company, LTD, a Subsidiary of The Hartford Financial
Services Group a/s/o Peter Pan Bus Lines Trust is, and was at all times relevant herein, a
Connecticut corporation with principal address of One Hartford Plaza, Hartford,
Connecticut 06155, and is and was an insurer licensed and authorized to conduct business
in the State of Connecticut.

2

5.  Defendant Charlie Smith is an individual who at all times relevant herein has been a

    resident of the Village of Uncasville, in the Town of Montville, State of Connecticut

## GENERAL AVERMENTS

6.  At all times relevant herein, Creditor's subrogor, Peter Pan Bus Lines Trust, was a

    corporation organized and existing under the laws of the Commonwealth of

    Massachusetts with its principal place of business in Springfield, Massachusetts.

7.  At all times mentioned herein, the Debtor, Charlie Smith, was an employee of the

    Creditor's subrogor and was at the time of the events described acting in the course of his

    employment.

8.  On or about May 8, 2007, the Debtor was operating a bus traveling on Route 2 near its

    intersection with Cossaduck Hill Road in North Stonington, Connecticut when a vehicle

    driven by Helmut Steinnagel crossed the center line and collided with the bus driven by

    the Debtor.

9.  As a result of this incident, the Debtor, Charlie Smith, sustained the personal injuries he

    particularly described as:

> Serious injuries to various parts of his body, including but not limited to the
> following: abrasion to left upper scap; persistent headaches; concussion; post-
> concussive symptoms; cervical musculoligamentous strain with associated pain;
> thoracic musculoligamentous strain with associated pain; lumbar
> musculoligamentous strain with associated chronic pain; bilateral chronic S1
> radiculopathy; numbness in legs and feet; aggravation of pre-existing conditions;
> and a severe shock to his nervous system.  All of the said injuries caused the
> [Debtor] severe pain, mental anguish and distress of mind, and enjoyment of life's
> activities, and some or all of said injuries, or the effects thereof are, or are likely
> to be, permanent in nature.

See, Exhibit A, Complaint of Charlie Smith, March 24, 2009, at Paragraph 5.

10. The employment of said Debtor by the Creditor's subrogor was within the scope of the Workers' Compensation Act of the State of Connecticut and his injuries arose out of and in the course of his employment.

11. As a result of these injuries, the intervening Creditor's subrogor paid benefits to the Debtor, Charlie Smith, and to his medical providers in accordance with the Connecticut Workers' Compensation Act, in the amount of $63,706.06.  See, Exhibit F, Stipulations of June 19, 2013.

12. The Debtor instituted an action, <u>Charlie Smith vs. Helmut Steinnagel,</u> and returnable on April 14, 2009 in the Superior Court, Judicial District of New London at New London, Docket Number KNL-CV-09-5011162-S to recover damages which Helmut Steinnagel was alleged be legally liable.  See, Exhibit A.

13. Pursuant to Connecticut General Statutes § 31-293, the Creditor's subrogor claimed by Intervening Complaint of June 5, 2009, that any damages recovered in the action shall be so paid and apportioned such that it would be reimbursed therefrom the amounts that it had paid, and had become obligated to pay, to or on behalf of the employee plaintiff under the terms of the Workers' Compensation Act.  See, Exhibit B, Intervening Complaint, June 5, 2009.[1]

14. Pursuant to Connecticut General Statutes § 31-293, notice of Creditor's lien under the Workers' Compensation Act was given by letter of June 5, 2009, to Debtor, through his then-attorney, T.J. Morelli-Wolfe, Esq.  See, Exhibit C.

---

[1] The motion to intervene was denied as untimely.  The effect of such denial was only that Creditor's subrogor could not be a party plaintiff to the action; the denial did not dissolve Creditor's or Creditor's subrogor's lien against any judgment or settlement proceeds.

15. Subsequent to June 2009, Debtor executed a release of liability in favor of Helmut Steinnagel in exchange for a settlement of $100,000, through his auto insurer, Allstate.

16. Debtor failed to pay any portion of that settlement to Creditor or Creditor's subrogor.

17. Creditor institute an action against Debtor styled <u>Pacific Insurance Company, Ltd., a subsidiary of The Hartford Financial Services Group a/s/o Peter Pan Bus Lines Trust v. Charlie Smith</u>, Docket No. HHD-CV-11-6021109-S, returnable April 12, 2011, in the Superior Court for the Hartford Judicial District, to be reimbursed on account of its lien on the said settlement proceeds.  See, Exhibit D, Complaint of March 15, 2011.

18. On October 19, 2011, the Superior Court issued a Memorandum of Decision indicating that Attorney Morelli-Wolfe and Debtor failed to properly recognize Creditor's and Creditor's subrogor's lien.  See, Exhibit E.

19. On July 15, 2013, the Superior Court issued a Memorandum of Decision awarding judgment to Creditor on its complaint in its entirety, in the amount of $63,960.54.  See, Exhibit G.

20. On September 4, 2013, the Superior Court awarded offer of compromise interest plus costs, bringing total judgment amount to $75,429.56.  See, Exhibit H.

21. On June 27, 2014, Debtor filed his petition under Chapter 7.  See, ECF No. 1.

22. On Schedule B, Item 21 thereof, "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims", Debtor identified only an Estimated 2014 tax return. See, ECF No. 1, at p. 9.

23. Schedule B, Item 21, Debtor failed to include his claim against Attorney Morelli-Wolfe for failing to properly advise him regarding Creditor's lien and for failing to properly dispose of the settlement proceeds entrusted to him.

24. Such claim may have a value of $75,429.56.

25. On Schedule F, Debtor wrongly identified the amount of Creditor's claim as $1.00, rather than $75,429.56 per the judgment of which he had notice for nine months and including the lien of which he had notice for five years.  See, ECF No. 1, at p. 16.

26. Debtor falsely executed his Declaration Concerning Debtor's Schedules in light of the omissions and misrepresentations on Schedules B & F.  See, ECF No. 1, at p. 24.

27. Debtor falsely executed his Petition by failing to include the potential claim in the estimated asset calculation and failing to include the liability to Creditor in the estimated liabilities.  See, ECF No. 1, at p. 1 & 3.

28. Debtor falsely submitted his Summary of Schedules by failing to include the potential claim in the asset calculation (Schedule B) and failing to include the liability to Creditor in the liabilities (Schedule F).  See, ECF No. 1, at p. 5.

29. Debtor falsely submitted his Statement of Financial Affairs (ECF No. 1, pp. 25-29), by misidentifying Creditor's judgment date (Item 4) and omitting the judgment amount.

30. On August 20, 2014, Debtor appeared for a § 341(a) Meeting of Creditors and failed to identify the claim against Attorney Morelli-Wolfe as an asset or correct the amount of Creditor's claim. See, Chapter 7 Trustee's Report of No Distribution, August 21, 2014.

## FIRST CLAIM FOR RELIEF

(For a Determination That Smith's Debts Are Not Dischargeable Pursuant to 11 U.S.C. §727(a)(4)(A))

31. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 30 above as though set forth fully herein.

32.  On June 27, 2014, Smith filed a Voluntary Petition for Bankruptcy with this court, swearing under penalty of perjury that the information which he provided in the Petition was true and correct.

33. On Schedule B of his Petition, Line 21, Smith did not identify any potential claim for legal malpractice against Attorney T.J. Morelli-Wolfe.

34. Plaintiff is informed and believes and therefore alleges that Attorney T.J. Morelli-Wolfe is liable to Smith for legal malpractice arising from his representation of Smith in the two actions noted above, including, but not limited to:

    a.   Failing to account for Plaintiff's lien in advising the proper settlement amount;

    b.   Failing to advise Smith of his liability to Plaintiff relative to the lien;

    c.   Failing to properly disburse the settlement proceeds to satisfy the lien; and

    d.   Failing to advise Smith to accept Plaintiff's offer of compromise, resulting in an award of interest.

35. Such malpractice claim should, accordingly, be considered an asset of Smith.

36. Smith's failure to include such malpractice claim in Schedule B is a deliberate omission of a material matter constituting a false oath or account in connection with the case.

37. Smith failed to disclose such claim as an asset with the intent to mislead creditors and the trustee as to the debtor's true financial condition, or with reckless disregard for the truth with regard to a matter material to the case.

## SECOND CLAIM FOR RELIEF

(For a Determination That Smith's Debts Are Not Dischargeable Pursuant to 11 U.S.C. §727(a)(4)(A))

38. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 37 above as though set forth fully herein.

39. On August 20, 2014, Smith appeared for a 341(a) Meeting of Creditors at which he provided testimony under oath under the penalties of perjury.

40. At the said meeting of creditors, Smith did not identify any potential claim for legal malpractice against Attorney T.J. Morelli-Wolfe.

41. Plaintiff is informed and believes and therefore alleges that Attorney T.J. Morelli-Wolfe is liable to Smith for legal malpractice arising from his representation of Smith in the two actions noted above, including, but not limited to:

    a. Failing to account for Plaintiff's lien in advising the proper settlement amount;

    b. Failing to advise Smith of his liability to Plaintiff relative to the lien;

    c. Failing to properly disburse the settlement proceeds to satisfy the lien; and

    d. Failing to advise Smith to accept Plaintiff's offer of compromise, resulting in an award of interest.

42. Such malpractice claim should, accordingly, be considered an asset of Smith.

43. Smith's failure to mention such malpractice claim at the meeting of creditors is a deliberate omission of a material matter constituting a false oath or account in connection with the case.

44. Smith failed to disclose such claim as an asset with the intent to mislead creditors and the trustee as to the debtor's true financial condition, or with reckless disregard for the truth with regard to a matter material to the case.

### THIRD CLAIM FOR RELIEF

(For a Determination That Smith's Debts Are Not Dischargeable Pursuant to 11 U.S.C.
§727(a)(4)(A))

45. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44

above as though set forth fully herein.

46. On June 27, 2014, Smith filed a Voluntary Petition for Bankruptcy with this court,

swearing under penalty of perjury that the information which he provided in the Petition

was true and correct.

47. On Schedule F of his Petition, Line 21, Smith stated his liability to Plaintiff was $1.00.

48. Smith's liability to Plaintiff was $75,429.56.

49. Smith's failure to state the liability in Schedule F is a deliberate omission of a material

matter constituting a false oath or account in connection with the case.

50. Smith failed to disclose such liability with the intent to mislead creditors and the trustee

as to the debtor's true financial condition, or with reckless disregard for the truth with

regard to a matter material to the case.

### FOURTH CLAIM FOR RELIEF

(For a Determination That Smith's Debts Are Not Dischargeable Pursuant to 11 U.S.C.
§727(a)(4)(A))

51. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50

above as though set forth fully herein.

52. On August 20, 2014, Smith appeared for a 341(a) Meeting of Creditors at which he

provided testimony under oath under the penalties of perjury.

53. At the said meeting of creditors, Smith did not his liability to Plaintiff in the amount of

$75,429.56.

54. Smith's failure to mention such liability at the meeting of creditors is a deliberate omission of a material matter constituting a false oath or account in connection with the case.

55. Smith failed to disclose such claim as an asset with the intent to mislead creditors and the trustee as to the debtor's true financial condition, or with reckless disregard for the truth with regard to a matter material to the case.

### FIFTH CLAIM FOR RELIEF

(For a Determination That Smith's Debts Are Not Dischargeable Pursuant to 11 U.S.C. §727(a)(5))

56. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 55 above as though set forth fully herein.

57. In 2009, Smith received a substantial sum of money ($100,000.00)  from Allstate in settlement of litigation.

58. In 2009, Smith received a substantial sum of money ($37,500.00) from Plaintiff in settlement of a workers' compensation claim.  See, Exhibit I.

59. Smith's Bankruptcy Petition claims assets of $3,946.00, and liabilities of $22,152.97. See, ECF No. 1.

60. At the meeting of creditors, on Smith claimed under oath that he possessed no assets of any value that was not exempt.

61.  Smith has offered no satisfactory explanation for the disbursement of $137,500 received in 2009.

### SIXTH CLAIM FOR RELIEF

(For a Determination That Smith's Debt To Pacific Is Not Dischargeable Pursuant to 11 U.S.C. §523(a)(2)(A))

10

62. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 61 above as though set forth fully herein.

63. Plaintiff entered into a workers' compensation Stipulation on January 9, 2009 with Smith in good faith and performed its part of the stipulation in full.  See, Exhibit I.

64. Smith falsely represented to Pacific when he entered into the Stipulation that he understood and agreed to every provision of the Stipulation.

65. Among the terms of the Stipulation was Smith's express acknowledgment of Pacific's lien against any tort claim brought by Smith.

66. Smith admitted in the state court action over the lien that he entered into the Stipulation with Pacific not believing that the lien provision would be enforceable and binding on him, separate and apart from intervention rights in that tort action.

67. Pacific reasonably relied on Smith's representations that was entering into the Stipulation in good faith, and that he (a) had read the entire Stipulation, (b) agreed with all of its provisions, (c) intended to abide by it in its entirety and (d) entered into it voluntarily and on the advice of independent counsel.

68.  Had Pacific known that Smith did not intend to abide by the lien provisions contained in the Stipulation, Pacific would not have entered into the Stipulation with Smith, and would not have paid him $37,500.

69. Smith's conduct at the time that he entered into the Stipulation with Pacific constitutes false pretenses and/or false representations, which Smith knew to be false and/or which Smith made with reckless disregard as to their truth or falsity.

**SEVENTH CLAIM FOR RELIEF**

(For a Determination That Smith's Debt To Pacific Is Not Dischargeable Pursuant to 11 U.S.C. §523(a)(4))

70. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 69 above as though set forth fully herein.

71. Smith had notice of Plaintiff's lien on the potential $100,000 settlement proceeds at least as early as January 9, 2009.  See, Exhibit I.

72. Supplemental notice of the lien was provided on June 5, 2009.  See, Exhibit C.

73. At some time after June 5, 2009, Smith acquired $100,000 in settlement proceeds from Allstate on the underlying tort action.

74. Smith was required to recognize and preserve Plaintiff's lien right in that settlement.

75. With custody over funds that properly belonged to Plaintiff, Smith acted in a fiduciary capacity on behalf of Plaintiff.

76. Smith commingled, failed to account for, and misdirected the funds belonging to Plaintiff, constituting defalcation.

77. Such was not mere inadvertence, but rather was a conscious disregard for Plaintiff's equitable title to the funds.

**EIGHTH CLAIM FOR RELIEF**

(For a Determination That Smith's Debt To Pacific Is Not Dischargeable Pursuant to 11 U.S.C. §523(a)(4))

78. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 77 above as though set forth fully herein.

79. Smith had notice of Plaintiff's lien on the potential $100,000 settlement proceeds at least as early as January 9, 2009.  See, Exhibit I.

80. Supplemental notice of the lien was provided on June 5, 2009.  See, Exhibit C.

81. At some time after June 5, 2009, Smith acquired $100,000 in settlement proceeds from Allstate on the underlying tort action.

82. Plaintiff's property, the funds to which it was entitled, was in the possession of Smith pending his anticipated distribution of such funds as, upon information and belief, Allstate provided only a single payment instrument.

83. Smith appropriated Plaintiff's funds to his own use while they were entrusted to him.

84. Smith admitted in the state court action over the lien that he did not intend to recognize the lien separate and apart from the right to intervene.

85. Smith, when he came into possession of the funds, fraudulently intended to convert them to his own use.

86. Smith's appropriation thus constitutes embezzlement of Plaintiff's funds.


WHEREFORE, plaintiff prays for the entry of judgment against defendant as follows:

1. That the Court determine that the debts of defendant be ruled nondischargeable as a result of defendant's knowingly and fraudulently making a false oath in connection with a bankruptcy case by virtue of the provisions of 11 U.S.C. § 727(a)(4)(A);

2. That the Court determine that the debts of defendant be ruled nondischargeable as a result of defendant's failure to satisfactorily explain his loss of and/or deficiency of assets by virtue of the provisions of 11 U.S.C. § 727(a)(5); or in the alternative

3. That the Court determine that the debt owed to plaintiff by defendant as a result of defendant's false pretenses and/or false representations, upon which plaintiff relied to its detriment, and as a result of defendant's defalcation and embezzlement of plaintiff's funds, is nondischargeable by virtue of the provisions of 1l U.S.C. §§ 523(a)(2) and (a)(4);

13

4. For an award of attorney's fees as allowable by law in an amount the Court determines to
   be reasonable;

5. For costs of suit herein incurred; and

6. For such other and further relief as this Court deems just and proper.


                                    Respectfully submitted,

                                    Pacific Insurance Company, LTD.
                                    A Subsidiary of The Hartford
                                    Financial Services Group a/s/o
                                    Peter Pan Bus Lines Trust

                                    /s/ Jay M. Wolman
                                    Jay M. Wolman CT29129
                                    Raymond Law Group LLC
                                    90 National Drive, Suite 3
                                    Glastonbury, CT 06033
                                    860-633-0580
                                    860-633-0438 Facsimile
                                    Wolman@raymondlawgroup.com
                                    Its Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a copy of foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

And by MAIL TO

Charlie A. Smith
24 Cove Road, Apt. 3
Uncasville, CT 06382

Date: October 6, 2014                          /s/ Jay M. Wolman
                                               Jay M. Wolman