**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

_____
IN RE:                                              :    CHAPTER 7
                                                    :
CHARLIE SMITH,                                      :    CASE NO. 14-21261 (JJT)
            DEBTOR.                                 :
_____:
PACIFIC INS. CO., LTD, A                            :
SUBSIDIARY OF THE HARTFORD                          :
FINANCIAL SERVICES GROUP a/s/o                      :
PETER PAN BUS LINES TRUST,                          :
                                                    :    ADV. PRO. No.: 14-02046
            PLAINTIFF                               :
                                                    :
V.                                                  :    RE: ECF Nos. 18, 19
                                                    :
CHARLIE SMITH,                                      :
                                                    :
            DEFENDANT.                              :
_____:

**APPEARANCES**

Bruce H. Raymond, Esq.                              Attorney for the Plaintiff
Raymond Law Group, LLC
90 National Drive, Suite 3
Glastonbury, CT 06033

Kevin D. Wickless, Esq.                             Attorney for the Defendant
Kevin Wickless Law, LLC
99 Main Street, Suite 3A
Norwich, CT 06360

Jody N. Cappello, Esq.                              Attorney for T.J. Morelli-Wolfe, Esq.
Winget, Spadafora & Schwartzberg, LLP
177 Broad Street, 10th floor
Stamford, CT 06901

## MEMORANDUM OF DECISION

Pacific Ins. Co. ("Creditor", "Pacific" or "Plaintiff") has moved for an order, under Rule 37 of the Federal Rules of Civil Procedure, Rule 7037 of the Federal Rules of Bankruptcy Procedure and Rule 37 of the United States District Court of Connecticut Local Rules, compelling the Debtor ("Debtor", "Smith" or "Defendant") to produce requested documents (the "Motion to Compel Production from the Defendant", ECF 18).  Pacific has also moved for an order, under Rules 37 and 45 of the Federal Rules of Civil Procedure, Rules 7037 and 9017 of the Federal Rules of Bankruptcy Procedure and Local Rule 37, compelling Smith's prior counsel, Attorney T.J. Morelli-Wolfe, to testify and produce documents under subpoena, and holding Morelli-Wolfe in contempt for his failure to comply with the subpoenas (the "Motion to Enforce the Subpoenas", ECF 19). For the reasons set forth herein, the Motion to Compel Production from the Defendant is granted, and the Motion to Enforce the Subpoenas is granted in part and denied in part.

### I.    BACKGROUND

On October 6, 2014, Pacific commenced the above-captioned adversary proceeding seeking, *inter alia*, to obtain a determination that Smith's debt to Pacific is nondischargeable on account of the Debtor's alleged defalcation of more than seventy-thousand dollars belonging to Pacific. Several years prior to the petition date, Pacific's subrogor ("Peter Pan Bus Lines") paid benefits to Smith and his medical providers, following a car accident that Smith suffered during his employment with Peter Pan Bus Lines. Smith, then represented by Attorney Morelli-Wolfe, brought a personal injury action in Connecticut Superior Court (*Charlie Smith v. Helmut Steinnagel*, No. KNL-CV09-5011162-S, hereinafter the "Negligence Action") to recover damages against the other motorist and ultimately obtained settlement proceeds of $100,000.00.

Despite receipt of prior written notice of Pacific's lien under the Worker's Compensation Act, Smith failed to pay any portion of its lien from the recovered proceeds. Thereafter, Pacific successfully prosecuted an action in Connecticut Superior Court against Smith to vindicate its lien (*Pacific Insurance Co., Ltd., a subsidiary of the Hartford Financial Services Group a/s/o Peter Pan Bus Lines Trust v. Charlie Smith*, No. HHD-CV11-6021109-S, hereinafter the "Lien Action"), ultimately securing a total judgment amount of $75,429.56 on September 4, 2013. Although Attorney Morelli-Wolfe represented Smith in this proceeding as well, by order dated June 16, 2014, the Superior Court disqualified him from any further representation in the matter.

Smith failed to pay any amount of the judgment and filed the pending Chapter 7 petition on June 27, 2014. Despite his knowledge of the outstanding $75,429.56 judgment in favor of Pacific, the Debtor identified the amount of Pacific's claim as $1.00 on Schedule F of his petition. Shortly thereafter, Pacific commenced the above-captioned adversary proceeding seeking to deny the Debtor's discharge under 11 U.S.C. §§ 727(a)(4)(A) and (a)(5), and/or to adjudge the claim nondischargeable under 11 U.S.C. §§ 523(a)(2)(A)) and (a)(4).

On December 22, 2014, Pacific served requests for production of documents upon the Debtor. The requests sought, *inter alia*, documents "evidencing the distribution of the proceeds of the settlement" of Smith's personal injury claim against the other motorist, documents relating to Pacific's lien against those settlement proceeds, correspondence with Attorney Morelli-Wolfe regarding Pacific's lien and documents evidencing Smith's fee agreement with Attorney Morelli-Wolfe:

3. Each and every document in the Defendant's possession concerning the matter of *Charlie Smith vs. Helmut Steinnagel*, in the Superior Court, Judicial District of New London at New London, Docket Number KNL-CV -09-50 11162-S.

4. Each and every document in the Defendant's possession concerning the matter of *Pacific Insurance Company, Ltd., a subsidiary of The Hartford Financial Services*

    *Group a/s/o Peter Pan Bus Lines Trust v. Charlie Smith*, in the Superior Court for the Hartford Judicial District, Docket No. HHD-CV-11-6021109-S.

5. Any and all documents referring or relating to the settlement of your claim against Helmut Steinnagel and/or his insurer.

6. Any and all correspondence to and from Attorney T.J. Morelli-Wolfe regarding the settlement of your claim against Helmut Steinnagel and/or his insurer.

7. Any and all documents referring or relating to Plaintiffs lien against the settlement of your claim against Helmut Steinnagel and/or his insurer.

8. Any and all correspondence to and from Attorney T.J. Morelli-Wolfe regarding Plaintiff's lien against the settlement of your claim against Helmut Steinnagel and/or his insurer.

9. Any and all documents evidencing the distribution of the proceeds of the settlement of your claim against Helmut Steinnagel and/or his insurer.

10. Any and all documents evidencing your fee agreement with Attorney T.J. Morelli-Wolfe relative to your claim against Helmut Steinnagel and/or his insurer.

11. Any and all documents relative to your decision to not disclose as an asset a potential claim against Attorney T.J. Morelli-Wolfe in your bankruptcy petition in this matter, including the schedules, statements and forms annexed thereto.

12. Any and all documents relative to your decision to not correctly disclose the amount of your liability to Plaintiff in your bankruptcy petition in this matter, including the schedules, statements and forms annexed thereto.

Plaintiff's December 22, 2014 Request for Production, Exhibit A to Plaintiff's Motion to Compel Production from the Defendant.

    Smith served his response to the requests for production on February 5, 2015—nearly two weeks after the response was due.[1] Rather than responding to each item or category, as Rule 37 dictates, Smith responded to all fourteen requests in a single manifestly-deficient paragraph:

---

[1] *See* Fed. R. Civ. P. 37(b)(2)(A) (absent intervening court order or stipulation by the parties, a "party to whom the request is directed must respond in writing within 30 days after being served").

>   ANSWERS: In response to questions Number 1-14 the Bankruptcy Petition Specifically pages 1 and 2 of Schedule F as well as B7 Statement of Affairs, the Trustee Package, a print out from the Judicial Website of his ongoing law suit, and page from his credit report attached hereto this document are the only documents used to prepare the Petition and to answer any interrogatory questions as well as attendance at the 341 Meeting of Creditors of which your office was not present.

Defendant's Response to Plaintiff's December 22, 2014 Request for Production, Exhibit B to Plaintiff's Motion to Compel Production from the Defendant. Thus, Smith did not object to the production of any document or category of documents, much less assert that specific documents would be withheld on account of the attorney-client privilege.

Yet, it is undisputed that Smith's production was devoid of documents responsive to request three and requests five through twelve—the document categories tailored to Pacific's core allegation that Smith and Attorney Morelli-Wolfe disregarded Pacific's lien and misappropriated the settlement proceeds from the Negligence Action.

On January 28, 2015, Pacific served both a subpoena *duces tecum* upon the Law Office of T.J. Morelli-Wolfe, P.C. commanding production on February 4, 2015, and a separate subpoena compelling Morelli-Wolfe to testify at a deposition scheduled for February 5, 2015. The subpoena *duces tecum* sought substantially the same documents that Pacific had requested from Smith, including, *inter alia*, documents concerning the settlement of Smith's personal injury claim, documents relating to Pacific's lien against those settlement proceeds, correspondence regarding Pacific's lien and documents evidencing Smith's fee agreement with Attorney Morelli-Wolfe:

>   1) Any and all documents evidencing communications with Helmut Steinnagel, his attorney(s) and/ or insurer, relative to a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

2) Any and all correspondence with with [sic] Helmut Steinnagel, his attorney(s) and/ or insurer e [sic], relative to the settlement of a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

3) Any and all documents relative to the lien of Plaintiff, relative to a claim by Charlie Smith and/or settlement thereof against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

4) Any and all documents relative to the lien of Plaintiff, relative to a claim by Charlie Smith and/or settlement thereof against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007 [duplication of paragraphs 3 and 4 in original]

5) Any and all documents evidencing the settlement of a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

6) Any and all documents relative to the payment of the settlement of a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

7) Any and all documents relative to your fee agreement with Charlie Smith relative to a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

8) Any and all documents relative to the recipt [sic] of the proceeds from the settlement of a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

9) Any and all documents relative to the distribution of the proceeds from the settlement of a claim against Helmut Steinnagel, Allstate Insurance Claim No. 3965871695JBK, policy no. 08491D110 for date of loss 5/8/2007

10) Any and all notes reflecting conversations between Charlie Smith and/or T.J. Morelli-Wolfe and Helmet Steinnagel and/or Allstate Insurance; and

11) Any and all notes regarding the workers' compensation lien and/or claim of reimbursement or subrogation of Pacific Insurance Company, LTd., The Hartford Financial Services Group, Inc., and/or Peter Pan Bus Lines Trust.

Plaintiff's January 28, 2015 Subpoena *Duces Tecum*, Exhibit B to Plaintiff's Motion to Enforce the Subpoenas.

Attorney Morelli-Wolfe produced five pages of documents in response to the subpoena *duces tecum*, which production consisted entirely of correspondence from insurance companies involved in the Negligence Action. Morelli-Wolfe did not file a written objection to the subpoena *duces tecum* at that time; instead, he claimed, at his February 5, 2015 deposition, that each and every withheld document was protected from disclosure by either the attorney-client privilege or the work product doctrine. Morelli-Wolfe did not produce a privilege log for withheld documents, nor did he provide an estimate of the number of withheld documents, apart from testifying that such documents numbered greater than ten.

Pacific deposed the Defendant shortly after deposing Attorney Morelli-Wolfe on February 5, 2015. At the deposition, Smith testified that he did not retain copies of the requested documents. Smith then conferred with his counsel, Attorney Wickless, and the parties agreed that Smith would obtain documents responsive to requests three and four (i.e. all documents related to the underlying Negilgence Action and Pacific's subsequent Lien Action) from Attorney Morelli-Wolfe and produce them within thirty days. Later, during the deposition, Smith unequivocally testified that he did not instruct Morelli-Wolfe to assert attorney-client privilege in response to the subpeonea *duces tecum*, nor was he personally asserting the attorney-client privilege with regard to Attorney Morelli-Wolfe's representation in the Negligence Action or the Lien Action. The parties then took a short recess to afford Smith an opportunity to discuss any privilege concerns with Attorney Wickless, after which the following exchange occurred:

> Q: With respect to matters that were the subject of Attorney Morelli-Wolfe's representation of you in the negligence action or the lien action, are you asserting attorney/client privilege relative to communications between you and Attorney Morelli-Wolfe?
>
> A: No.

*   *   *

> Q: Would you instruct Attorney Morelli-Wolfe to provide to us the documents, and including his own personal notes, that he took in the course of representing you in the negligence action or lien action?
>
> A: Would I ask him to give those to you?
>
> Q: Yes.
>
> A: Yes.
>
> Q: Would you waive any claims of legal privilege you might have in those?
>
> A: Yes.

February 5, 2015 Deposition of Charlie Smith, pp. 66-67, Exhibit C to Plaintiff's Motion to Compel Production of Documents From the Defendant.

By email dated April 13, 2015, Pacific's counsel informed Attorney Morelli-Wolfe that Smith had waived any assertion of attorney-client privilege regarding documents subject to the subpoena *duces tecum*. The email noted that Pacific had yet to receive any further document production, and requested an opportunity to confer with Attorney Morelli-Wolfe to resolve the dispute without the need for motion practice.

As set forth in Morelli-Wolfe's April 16, 2015 response, he met with Smith on April 15, 2015, and procured an affidavit from the Defendant purporting to nullify or revoke any waiver of the attorney-client privilege as follows:

> At my February 5, 2015 deposition, I was not fully advised about the attorney-client privilege and did not knowingly and intelligently waive the attorney-client privilege. Having now been fully advised of the privilege and the implications therein, I do not waive the attorney-client privilege with respect to my conversations with Attorney T.J. Morelli-Wolfe or the contents of my file with his office.

April 15, 2015 Affidavit of Charlie Smith, Exhibit D to Plaintiff's Motion to Compel Production From the Defendant (the "Affidavit").

By email dated April 16, 2015, Pacific's counsel contacted Attorney Wickless, notified him of the Affidavit, and requested that he prevail upon his client to obtain the requested documents that remained in the possession of Attorney Morelli-Wolfe. Pacific's effort to resolve the dispute proved unsuccessful.

On May 7, 2015, the Plaintiff filed both the Motion to Compel Production from the Defendant and the Motion to Enforce the Subpoenas. On July 6, 2015, Attorney Morelli-Wolfe filed objections to both subpoenas, which objections also purported to move for a protective order. The Defendant filed an objection to the Motion to Compel on October 14, 2015.

Neither Smith nor Attorney Morelli-Wolfe has refined the blanket claim of attorney-client privilege. To date, neither Smith nor Attorney Morelli-Wolfe has furnished a privilege log.

This proceeding, including the pending motions, was reassigned to this Court on September 1, 2016. The Court held a status conference regarding the pending motions on January 5 and 10, 2017.

**II.     MOTION TO COMPEL PRODUCTION FROM THE DEFENDANT**

Pacific argued that the Defendant should be compelled to produce all documents responsive to its December 22, 2014 requests because the majority of responsive documents are not privileged attorney-client communications, and any privilege that might attach to certain documents has been waived, both by Smith's express waiver during his deposition and by his participation with Attorney Morelli-Wolfe to defraud Pacific out of funds it is legally entitled to. The Defendant now unconvincingly argues that he was not fully advised about the consequences of waiver at deposition, and therefore he did not knowingly and intelligently waive his attorney-client privilege with regard to communications with Attorney Morelli-Wolfe. Smith's narrow focus on his alleged failure to obtain fulsome advice is largely irrelevant and wholly inadequate

to justify his flagrant noncompliance with discovery obligations. Notwithstanding ample grounds for finding waiver, the Defendant has utterly failed to meet his burden of establishing the application of the attorney-client privilege, in the first instance.

A party invoking the attorney-client privilege bears the burden to establish the elements of the privilege: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).[2] "If the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege, his claim will be rejected." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927 (1996). Blanket assertions that the privilege should apply are insufficient to warrant protection. *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 53–54 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992). The party claiming the privilege must establish "the applicability of the privilege to the particular circumstances and discovery requests." *Id.* "A party seeking to avoid discovery cannot hide behind bald statements of 'privilege' and 'work-product' and expect the court to supply the rational[e] to support the claims." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 55 (D. Conn. 2005).

The Defendant's blanket claim of attorney-client privilege "with respect to [his] conversations with Attorney T.J. Morelli-Wolfe or the contents of [his] file" presents precisely the type of spurious and conclusory claim that must be rejected. The Defendant has not carried his burden to establish the application of the attorney-client privilege to specific

---

[2] Where, as here, the Court is determining questions of federal substantive law, "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege[.]" Fed. R. Evid. 501 (made applicable to these proceedings by Fed. R. Bankr. P. 9017); *In re Tippy Togs of Miami, Inc.*, 237 B.R. 236, 237 (Bankr. S.D. Fla. 1999).

communications. Indeed, he has not even sought to do so. Therefore, the record is devoid of evidence establishing the necessary elements of attorney-client privilege as to a single withheld document.

Many, and perhaps most, of the withheld documents, including financial records evidencing the disposition of proceeds from the Negligence Action and Smith's fee agreement with Attorney Morelli-Wolfe therein, are unquestionably not privileged attorney-client communications. *See Thomas v. F.F. Fin., Inc.*, 128 F.R.D. 192, 194 (S.D.N.Y. 1989) (fee agreements are not confidential attorney-client communications). Moreover, any financial records or other papers in the Defendant's 'file' "acquired no special protection from the simple fact of being turned over to an attorney." *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962).

The Defendant's belated assertion of privilege in his Affidavit also ignores the fact that his response to Pacific's Requests for Production asserted no objections. Parties must respond to production requests within thirty days after being served. Fed. R. Civ.P. 34(b)(2)(A). "A party who fails to file timely objections waives all objections, including those based on privilege or work product." *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006) (quoting *Ramirez v. County of Los Angeles,* 231 F.R.D. 407, 409 (C.D. Cal. 2005)). The Defendant's failure to object, by itself, provides sufficient grounds to deem all objections waived, including those based on privilege. *See id.*; *see also Spencer v. Kenny*, 2015 WL 6958009, at *2 (D. Conn. Nov. 10, 2015).

To withhold otherwise discoverable information based on the attorney-client privilege, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will

enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Failure to comply with these requirements may be deemed a waiver of privilege. *See* Fed.R.Civ.P. 26(b)(5), Advisory Committee Note (1993) ("To withhold materials without such notice is contrary to the rule, subjects [a] party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.").

Further, Local Rule of Civil Procedure 26(e) requires that "when a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information, the party asserting the privilege or protection shall serve on all parties a privilege log . . . ." D. Conn. L. Civ. R. 26(e). "The privilege log is not simply a technicality, it is [an] essential tool which allows the parties and the court to make an intelligent decision as to whether a privilege or immunity exists." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 55 (D. Conn. 2005). Naturally, then, failure to provide a privilege log "is sufficient grounds to deem the privilege waived." *Horace Mann.*, 238 F.R.D. at 538 (citing *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992)); *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 55 (D. Conn. 2005); *Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 169 (D. Conn. 2005).

Having failed to claim attorney-client privilege with regard to a single document request, the Defendant has also failed to provide a privilege log, despite withholding production for more than two years. As such, the Defendant has waived any privilege that might have otherwise shielded certain documents from disclosure.

At his deposition, moreover, the Defendant repeatedly consented to the disclosure of all communications with Attorney Morelli-Wolfe in connection with the Negligence Action and the Lien Action. It is well-settled, indeed, "hornbook law that the voluntary disclosure or consent to

the disclosure of a communication, otherwise subject to a claim of privilege, effectively waives the privilege." *In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 463 (S.D.N.Y. 1973).

More than two months after he consented to this blanket disclosure, the Defendant attempted—through the Affidavit—to reassert his attorney-client privilege. In the Second Circuit, however, "the privilege cannot survive if the privilege holder lacks the continuing intention to maintain confidentiality, irrespective of whether the communications actually were disclosed." *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 482 (S.D.N.Y. 1993) (citing *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973)); *see also United States v. Krasnov*, 143 F.Supp. 184, 191 (E.D. Pa. 1956), *aff'd per curiam*, 355 U.S. 5, 78 S.Ct. 34, 2 L.Ed.2d 21 (1957) ("The privilege once waived cannot be regained . . . .").

The Defendant's alleged lack of understanding, at the time of his consent, does not alter this conclusion. Waiver may even occur if a party "does not intentionally relinquish a known right." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 468 (S.D.N.Y. 1996) (internal quotation omitted).

The circumstances surrounding the Defendant's sudden appreciation for his attorney-client privilege do, however, warrant scrutiny. More than two months after he consented to disclosure, yet only two days after Attorney Morelli-Wolfe learned of this waiver, the Defendant met with Attorney Morelli-Wolfe and executed the Affidavit. It was Attorney Morelli-Wolfe, therefore—the same attorney who had been disqualified as the Defendant's counsel in the Lien Action and accused of conspiring with the Defendant to perpetrate fraud—that counseled Smith to revoke his waiver. This sequence of events lends support to Pacific's invocation of the crime fraud exception to the attorney-client privilege. "By its nature," however, "the crime-fraud exception can only apply, if it applies at all, to instances where the attorney-client privilege itself

is first established." *Renner v. Chase Manhattan Bank*, 2001 WL 1819215, at *2 (S.D.N.Y. July 13, 2001). Where, as here, the privilege has been waived or relinquished, the Court need not address this exception at this time.

The Defendant has failed to establish the application of the attorney-client privilege, and waived any such privilege many times over. All documents responsive to Pacific's December 22, 2014 Request for Production must be produced within fifteen (15) days of the date of this Decision.

### III.   MOTION TO ENFORCE THE SUBPOENAS

Pacific argued that Attorney Morelli-Wolfe should be compelled to testify again and to produce all documents subject to the subpoena *duces tecum*, because he erroneously invoked the attorney-client privilege to withhold non-privileged testimony and documents. Pacific also contended that Attorney Morelli-Wolfe should be held in contempt for his failure to comply with the subpoenas. Much like the Defendant, Attorney Morelli-Wolfe responded that the Defendant's express waiver of his attorney-client privilege was ineffective and, in any event, occurred after he had properly invoked the privilege during his deposition. He therefore moved for a protective order to forestall the undue burden that he believes another deposition would pose. Attorney Morelli-Wolfe further argued that he properly withheld documents shielded by both the attorney-client privilege and the work-product doctrine and, accordingly, moved for a protective order shielding such documents from disclosure and disputed the contention that he should be held in contempt for protecting privileged information.

#### A.  Legal Standards

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a party may serve a subpoena commanding a nonparty to "attend and testify" or "produce designated documents".

Fed. R. Civ. P. 45(a). To safeguard against an overbroad or abusive subpoena, Rule 45 entitles a person commanded to produce documents to serve a written objection on the party or attorney designated in the subpoena. Fed. R. Civ. P. 45(d)(2)(B). "The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *Id.* Upon timely motion, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The fourteen-day time limitation to serve written objections to a subpoena is crucial as failure to do so typically constitutes a waiver of such objections." *In re Corso*, 328 B.R. 375, 384 (E.D.N.Y. 2005); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (same). The fourteen-day time limitation applies with equal force to assertions of privilege. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998). "A late objection may be allowed for good cause where the subpoena is overbroad so that it goes beyond the boundaries of fair discovery, the recipient is a non-party acting in good faith, and the counsel for both the recipient and the issuing party were in contact concerning the recipient's compliance before the ultimate challenge to the subpoena." *In re Parikh*, 397 B.R. 518, 525 (Bankr. E.D.N.Y. 2008).

Parties may obtain discovery regarding any non-privileged matter that is relevant to the pending proceeding and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Notwithstanding this breadth, any person from whom discovery is sought may move for a protective order limiting the scope of discovery. Fed. R. Civ. P. 26(c). When the person seeking a protective order demonstrates good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery". Fed. R. Civ. P. 26(c)(1). "The party resisting discovery

bears the burden of showing why discovery should be denied." *Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 290 (D. Conn. Nov. 30, 2007) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)).

However, a motion for a protective order "must be made in a timely manner, which ordinarily means that the motion must be made by the date set for the discovery or production unless there was no opportunity to so move." *Mahar v. U.S. Xpress Enterprises, Inc.*, 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010). Failure to timely move for a protective order may result in a waiver. *Ehrlich v. Inc. Vill. of Sea Cliff*, 2007 WL 1593241, at *4 (E.D.N.Y. June 1, 2007); *United States v. Int'l Bus. Mach. Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y.1976).

Further, "[t]he motion *must include* a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1) (emphasis added). Local Rule of Civil Procedure 37 likewise mandates that "[n]o motion pursuant to Rules 26 through 37, Fed.R.Civ.P. shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution." Failure to include such a certification constitutes grounds for denial, though a court may nonetheless consider the merits of a motion "where failure to do so 'may unduly prejudice the movant.'" *Orillaneda v. French Culinary Inst.*, 2011 WL 4375365, at *5 (S.D.N.Y. Sept. 19, 2011) (quoting *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 302 (D. Kan.1996)).

### B. Discussion

Attorney Morelli-Wolfe's opposition to the subpoena *duces tecum* is meritless. Despite withholding all but five pages of responsive documents, and refusing to provide a privilege log,

he first filed a written objection to the subpoena on July 6, 2015—five months after the subpoena was served. He, thus, waived all objections, including those based on the work product doctrine. *See Corso*, 328 B.R. 375; *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 701–02 (S.D.N.Y. 1976) (response to subpoena that was 68 days late was untimely and waived right to object); *see also In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998) (all objections to subpoena *duces tecum*, including those asserting any privilege, should be lodged within 14 days).[3]

Moreover, Federal Rule of Civil Procedure 45 requires that a person "withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must . . . expressly make the claim and describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). It is undisputed that Attorney Morelli-Wolfe utterly failed to do so.

Quite simply, there can be no doubt that Attorney Morelli-Wolfe has failed to meet his burden of establishing the application of the work product doctrine, given his failure to provide a privilege log or to otherwise identify allegedly-protected documents. "This burden can be met only by an evidentiary showing based on competent evidence . . . and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *Bowne*, 150 F.R.D. at 470 (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (internal citations omitted).

Further, Attorney Morelli-Wolfe cannot refuse production on account of an alleged attorney-client privilege. Unlike the work product protection, "the attorney-client privilege belongs solely to the client", *Lama v. Malik*, 25 F. Supp. 3d 316, 319 (E.D.N.Y. 2014), who in this case has both affirmatively waived and failed to protect his privilege.

---

[3] None of the good cause exceptions permitting late objections applies here.

Attorney Morelli-Wolfe's motion for a protective order is also without merit. The motion was untimely, contained only conclusory allegations of privilege and work product protection, and failed to include the required certification that he "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Nothing in the record suggests that Attorney Morelli-Wolfe attempted to confer with the Plaintiff to resolve the dispute. Far from making a "good faith effort to eliminate or reduce the area of controversy", as Local Rule 37 mandates, Attorney Morelli-Wolfe withheld nearly every responsive document and spouted conclusory objections.

The motion for a protective order is, therefore, denied, and the motion to enforce the subpoena *duces tecum* is granted.

The motion to require Attorney Morelli-Wolfe to attend and testify at another deposition is denied without prejudice. A further deposition of Attorney Morelli-Wolfe may prove unnecessary in light of the other items ordered disclosed herein.

The last branch of the motion seeks an order holding Attorney Morelli-Wolfe in contempt for his failure to obey the subpoena *duces tecum*. Federal Rule of Civil Procedure 45 provides that a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). A person may be held in civil contempt for failure to comply with a subpoena so long as the subpoena the recipient failed to comply with is clear and unambiguous, the proof of noncompliance is clear and convincing, and the recipient has not diligently attempted to comply in a reasonable manner. *Parikh*, 397 B.R. at 527. In addition, the recipient must be afforded notice of the alleged contempt and an opportunity to be heard. *Id.* Each of these requirements has been met here. Attorney Morelli-Wolfe withheld nearly every document subject to the subpoena, without filing

a timely written objection, based on blanket claims of attorney-client privilege and work product protection. Such unsupported and unsupportable claims of privilege do not qualify as an "adequate excuse". Therefore, Attorney Morelli-Wolfe shall be fined in the amount of $150.00 per day[4] from the date herein until he produces the subpoenaed documents. Further, Attorney Morelli-Wolfe shall pay, within ten (10) days, the sum of $1,000.00 to Pacific to compensate it for those fees and expenses incurred by it in the prosecution of these motions.

    **IT IS SO ORDERED** at Hartford, Connecticut this 29th day of March 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[4] Any such sums due shall be payable to the Clerk of the U.S. Bankruptcy Court for the District of Connecticut and shall be payable on or before the first of every month.